**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **AYKERIM MESSAY** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-26-896-J** |
| ) | |
| **CHRIS GANTT[1] et al.,** ) | |
| ) | |
| **Respondents.** ) | |

**REPORT AND RECOMMENDATION**

Petitioner Aykerim Messay, a noncitizen[2] and Ethiopian national proceeding *pro se*, filed a Petition for Writ of Habeas Corpus challenging his detention by U.S. Immigration and Customs Enforcement (ICE) under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge Bernard M. Jones II referred this matter to the undersigned magistrate judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Respondents filed a Response and Petitioner filed a Reply (ECF No. 8 & 9). For the reasons set forth below, the undersigned recommends the Petition be **GRANTED**.

**I.    BACKGROUND**

Petitioner is a citizen of Ethiopia and entered the United Stated on May 20, 1990, and obtained lawful permanent resident status that day. (ECF No. 8-1:1). In 2023,

---

[1] Chris Gantt was named Warden of the Cimarron Correctional Facility in May 2026. He replaces Scarlet Grant and is substituted as a proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Petitioner was convicted on a weapons charge and evading arrest. (ECF No. 8-1). On April 3, 2025, DHS charged Petitioner as removable based on the firearms conviction and took him into custody. (ECF No. 8-2).[3] On September 18, 2025, an Immigration Judge ordered Petitioner removed. *See* ECF No. 8-3. Petitioner did not appeal, rendering the removal order administratively final on October 20, 2025. *See* ECF 8-1:2.[4]

Respondents submit a declaration from Francisco Cappas, deportation officer assigned to Petitioner's case, regarding the efforts which have been made to effectuate Petitioner's removal. According to Mr. Cappas, on January 8, 2026, a travel document request was sent to ICE Enforcement and Removal Operations ("ERO") for "review." (ECF No. 8-1:3). On March 11, 2026, a second request was submitted to ERO for review. (ECF No. 8-1:3). The only additional information provided by Respondents regarding efforts at Petitioner's removal are that they "remain ongoing." (ECF No. 8-1:3).

## II.    PETITIONER'S CLAIMS

Petitioner asserts four grounds in his Petition: (1) prolonged detention in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) violations of procedural and substantive Due Process; (3) violations of the Immigration and Nationality Act and the Administrative Procedures Act through failures to conduct custody reviews; and (4) prolonged detention without a bond hearing in violation of the Fifth Amendment. (ECF No. 1:6-7). Petitioner

---

[3] Petitioner states he was taken into DHS custody on April 9, 2025 and Respondents allege that date was April 2, 2025. *See* ECF Nos. 1:4 & 8-1:2. But the Notice to Appear, as submitted by Respondents show the proper date as April 3, 2025.

[4] Pursuant to 8 U.S.C. § 1252(b)(1), Petitioner had 30 days from the date the Immigration Judge ordered removal to file his appeal. The 30th day fell on Sunday, October 19, 2025, making the following day Petitioner's actual deadline.

seeks release under an Order of Supervision, or, in the alternative a custody redetermination hearing at which the government bears the burden of proof. (ECF No. 1:7).

## III.    STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. at 687-88).

## IV.    PETITIONER IS ENTITLED TO RELEIF UNDER *ZADVYDAS*

In Ground One, Petitioner asserts that his continued detention violates 8 U.S.C. § 1231(a). (ECF No. 1:6). The Court should agree.

### A.    Legal Framework

Under 8 U.S.C. § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has discretion to detain inadmissible or criminal aliens. *Id.* § 1231(a)(6). However, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *See Zadvydas*, 533 U.S. at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating that "the reasonable period of post-removal detention is presumptively six months"). After that, a detainee may bring a habeas action to challenge

his detention. *Zadvydas*, 533 U.S. at 688. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

To obtain habeas relief, a petitioner has the initial burden to show the post-removal-order detention has surpassed six months and to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Further, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

In applying this limitation in the context of a habeas challenge to continued detention, the ultimate question for the court is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. Significantly, the decision to be rendered by the Court is not "[t]he choice . . . between imprisonment and the alien 'living at large'" but "between imprisonment and supervision under release conditions that may not be violated." *Id.* at 696.

The definitive issue addressed in *Zadvydas* is contextually important and bears repeating here: "Whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *Id.* at 695. As the Supreme Court noted, detention, like that of Petitioner that occurs after the 90-day removal period, "has no obvious termination point." *Id.* at 697.

What constitutes a "significant likelihood of removal" and how to measure the "reasonably foreseeable future," particularly in light of the "rule of relativism" identified in *Zadvydas*, is incapable of any bright-line delineation. Instead the analysis is case-specific and fact driven. For that reason, district courts across the country have utilized an array of approaches in deciding when continued post-removal-period detention of an immigrant becomes unconstitutional and reached varying conclusions. Within this judicial district, judges have also looked to whether the petitioner has demonstrated "institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. 24-464-SLP, 2024 WL 5465749 at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025).

**B.    The Length of Petitioner's Detention is Beyond What is Presumptively Reasonable**

There is no dispute that Petitioner has been redetained beyond the six-month presumptively reasonable period of detention. And that was true as of the date he filed his Petition on April 23, 2026. At that time, he had been redetained for just over six months. And, as set forth, that redetention is now at the approximately eight-month mark and continues to grow.

**C.    Petitioner has Shown Good Reason to Believe that There is No Significant Likelihood of Removal in the Reasonably Foreseeable Future**

As noted, Petitioner's current redetention exceeded the presumptively reasonable six-month period at the time of filing the Petition. *See supra*. Thus, he has established a prima facie *Zadvydas* claim. To this end, although the length of the prior period of post-removal detention need not necessarily be considered here, the Court finds that "ICE's unsuccessful efforts at removing Petitioner during that prior period of post-removal detention remain relevant." *Khaliq v. Noem*, --- F. Supp. 3d. ---, 2026 WL 196631, at *7 (W.D. Okla. Jan. 26, 2026).

During the post-removal-order period, ICE has been unable to secure travel documents from Ethiopia. In fact, beyond a statement that Mr. Messay's travel document request has twice been sent to ERO "for review," there is no indication that any official from ERO or DHS in general has had any communication or contact with Ethiopian officials regarding Petitioner's potential removal to that country. *See* ECF No. 8-1. Even if ERO officials do contact Ethiopian officials, Petitioner believes that officials there will not likely respond due to the "current economic situation in Ethiopia with the ongoing civil war." *See* ECF No. 9:2. In *Khaliq*, under similar circumstances, Chief District Judge Palk found that "Petitioner ha[d] shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" because "although ICE claim[ed] it [wa]s going to pursue travel documents to Palestine, no communications with that country ha[d] yet been initiated." *Khaliq v. Noem*, --- F. Supp. 3d. ---, 2026 WL 196631, at *8. Thus, the Court should conclude that Petitioner has met his initial burden under *Zadvydas*.

### D.    Respondents Have Failed to Rebut Petitioner's Showing

Respondents' showing of a significant likelihood of Petitioner's removal in the reasonably foreseeable future is limited to the following statement by Mr. Cappas:

> On January 8, 2026, a Travel Document Request was submitted to ERO Headquarters for Review. On March 11, 2026, a second TDR was shipped to headquarters fore review. Based on Messay's criminal record, he is a priority for removal. Removal efforts remain ongoing.

(ECF No. 8-1:2).

Respondents provide no evidence to support Mr. Cappas' statements. For example, Respondents provide no evidence as to the number of aliens that have been removed to Ethiopia during Petitioner's period of detention, or any other evidence as to the prospects of the removal of such aliens. Instead, in wholly conclusory fashion, Mr. Cappas asserts that removal efforts are ongoing. Such a conclusory and threadbare statement in the absence of evidence is unconvincing as the record lacks any evidence to show that removal of aliens similarly situated to Petitioner (or even removal of aliens to Ethiopia, generally) has been successful. And Petitioner's ties to Ethiopia, while not non-existent, are significantly attenuated, as Petitioner has been in this country over thirty-six years and neither party has indicated that Petitioner has family members there or any other ties to that country. "Under these circumstances, the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq v. Noem*, --- F. Supp. 3d. ---, 2026 WL 196631, at *9 (citing *Douglas v. Baker*, No. 25-cv-2243-ABA, 2025 WL 2997585 at *3, 4 (D. Md. Oct. 24, 2025) (finding that passage of time coupled with "the absence of any evidence that

the government has used that time to advance efforts to remove" the petitioner demonstrate that detention no longer authorized by *Zadvydas* (citing cases).

Accordingly, the Court should find that Petitioner's removal is not significantly likely in the reasonably foreseeable future. Petitioner is entitled to habeas relief pursuant to 28 U.S.C. § 2241 as he is in custody "in violation of the Constitution or laws . . . of the United States." *Id.* § 2241(c)(2).[5]

## IV.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition for habeas relief by ordering that Petitioner be released from custody immediately, subject to an appropriate Order of Supervision.[6]

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **July 7, 2026**. If a party wishes to respond to the other party's objections, such response must be filed not later than **July 10, 2026**. *See id*. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

---

[5] As Petitioner is entitled to relief on Ground One, the Court need not address the remaining claims.

[6] *See Zadvydas*, 533 U.S. at 700 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." (citations omitted)).

## V.    STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on June 30, 2026.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE